**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIEL BERBANO, MICHAEL WALSH, MICHELLE GARCIA, MARLA KNEPPER, KRISTEN BECKHAM, and TRACY FOSTER, on behalf of themselves and all others similarly situated, | Case No. 24-cv-11743 |
| Plaintiffs, | |
| | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| TREEHOUSE FOODS, INC., | |
| Defendant. | |

<u>**PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiffs Daniel Berbano, Michael Walsh, Michelle Garcia, Marla Knepper, Kristen Beckham, and Tracy Foster ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined below), bring this Class Action Complaint against Treehouse Foods, Inc., ("Treehouse" or "Defendant"). Plaintiffs base these allegations on personal knowledge as to matters related to and known to them. As to all other matters, Plaintiffs base their allegations on information and belief and through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for the allegations below.

<u>**NATURE OF THE ACTION**</u>

1. Treehouse Foods, Inc., is a manufacturer of frozen breakfast food products, including frozen waffles and pancakes.

2. Plaintiffs bring this case on behalf of themselves and all other consumers nationwide who bought Defendant's frozen breakfast products manufactured at its Brantford,

1

Ontario, Canada facility and which possess an expiration or "best by" date between October 1, 2024 and October 11, 2025 (collectively herein, the "Products"). *See* Exhibits A[1] and B.[2]

3.      The Products were and are unfit for distribution and/or consumption because they became contaminated with *Listeria monocytogenes*, a harmful bacterium which causes the infection listeriosis and can lead to severe symptoms including but not limited to fever, muscle aches, fatigue, confusion, seizures, and loss of balance. Individuals who are pregnant and become infected with listeriosis can suffer negative pregnancy outcomes including miscarriage and stillbirth. In the most severe cases, listeriosis can be fatal.

4.      Defendant manufactures, warrants, advertises, markets, distributes, and sells various frozen breakfast products under several brand names, including 365 Organic, Best Choice, Always Save, Schnucks, Private Selection, Kodiak Cakes, and Kroger brands, among many others. For the full list of brands and products affected, refer to Exhibit A.[3]

5.      On October 18, 2024, Defendant announced a recall of some frozen waffle products due to the potential for contamination with *L. monocytogenes*, which provided information for consumers regarding which products were affected. The recall notice stated "[t]here have been no

---

[1] Exhibit A is a true and correct copy of the October 18, 2024 Treehouse Foods, Inc. recall notice, available at https://www.treehousefoods.com/news-and-media/press-release-details/2024/TreeHouse-Foods-Announces-Voluntary-Recall-of-Certain-Waffle-Products-Due-to-the-Potential-for-Listeria-monocytogenes-Contamination/default.aspx.

[2] Exhibit B is a true and correct copy of the October 22, 2024 Treehouse Foods, Inc. recall notice, available at  https://www.treehousefoods.com/news-and-media/press-release-details/2024/TreeHouse-Foods-Announces-Expansion-of-Voluntary-Recall-to-Include-All-Waffle-and-Pancake-Products-Due-to-the-Potential-for-Listeria-monocytogenes-Contamination/default.aspx.

[3] *TreeHouse Foods Announces Expansion of Voluntary Recall to Include All Waffle and Pancake Products Due to the Potential for Listeria monocytogenes Contamination*, TreeHouse Foods (Oct. 22, 2024), https://www.treehousefoods.com/news-and-media/press-release-details/2024/TreeHouse-Foods-Announces-Expansion-of-Voluntary-Recall-to-Include-All-Waffle-and-Pancake-Products-Due-to-the-Potential-for-Listeria-monocytogenes-Contamination/default.aspx.

confirmed reports of illness linked to the recalled products to date."[4] Defendant claims the contamination was discovered through routine testing.

6.     Treehouse expanded the recall on October 22, 2024 to include all products within shelf-life manufactured at its Brantford, Ontario, Canada facility, and now includes frozen toaster waffles, Belgian waffles, and pancake products.[5] The October 18, 2024 and October 22, 2024 recalls are collectively referred to as the "Recalls."

7.     Plaintiffs are individuals who purchased the products without notice or knowledge that the Products were worthless and/or worth less than the price they paid, and they are individuals who experienced a range of symptoms consistent with listeriosis after consuming the Products.

8.     Listeriosis is a serious infection which, per the CDC is "intestinal" but also "invasive," indicating it begins in the intestinal system but can spread to other systems of the body. Listeriosis is particularly harmful to individuals who are pregnant, newborns, older adults, and individuals with weakened immune systems.[6]

9.     Severe infections can cause additional complications, particularly if it spreads to the bloodstream or the brain. In such circumstances the infection can cause meningitis.[7]

---

[4] Exhibit C is a true and correct copy of the Food and Drug Administration's October 18, 2024 recall announcement, available at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/treehouse-foods-announces-voluntary-recall-certain-waffle-products-due-potential-listeria.
[5] Exhibit D is a true and correct copy of the Food and Drug Administration's October 22, 2024 recall announcement, available at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/treehouse-foods-announces-expansion-voluntary-recall-include-all-waffle-and-pancake-products-due.
[6] *Symptoms of* Listeria *infection*, Centers for Disease Control and Prevention, https://www.cdc.gov/listeria/signs-symptoms/index.html (last accessed Nov. 13, 2024).
[7] *Listeria infection*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269 (last accessed Nov. 13, 2024).

10.     *L. monocytogenes* is a particularly problematic contaminant because it can reproduce to dangerous levels in low temperatures – even in refrigerators and freezers.[8]

11.     Defendant manufactures, sells, and distributes the Products to consumers, including Plaintiffs, across the United States.

12.     Defendant marketed and advertised the Products as being fit or suitable for human consumption, represented that the Products provide nutrition and/or guaranteed the Products for taste and nutrition: Defendant's marketing and advertising of the Products is false, deceptive, and misleading to reasonable consumers because the Products were contaminated with *L. monocytogenes*, and thus were not as advertised, represented, or guaranteed.

13.     Considering there exist on the market alternative products which lack contamination of *L. monocytogenes*, the contamination is avoidable.

14.     Defendant did not notify Plaintiffs or Class members of the risk of contamination through the product labels, ingredients, packaging or advertising—an omission which caused serious harm to the purchases of the Products.

15.     Plaintiffs and Class members would not have purchased the Products had they known the products contained, or might have contained, dangerous or toxic levels of *L. monocytogenes* and/or that Defendant did not adequately test, screen, and/or inspect the Products before selling them.

16.     Accordingly, Plaintiffs bring this action and assert claims on behalf of themselves and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, breach of express and implied warranties, violation of relevant state consumer protections acts, and unjust enrichment.

---

[8] *Id.*

4

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), the number of members of the proposed Class exceeds 100, and many members of the proposed Class are citizens of different states than Defendant.

18.     This Court has general personal jurisdiction over Defendant because Defendant is a citizen of Illinois with its principal place of business in this district and regularly conducts business in this forum.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as this is the Judicial District in which Defendant resides and where a substantial part of the events or omissions giving rise to the claim occurred.

20.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

21.     Plaintiff Daniel Berbano is a citizen of California and a resident of Stockton, California. Within the last year, Plaintiff purchased Great Value Frozen Buttermilk Waffles that are subject to the Recalls.

22.     Plaintiff Michael Walsh is a citizen of California and a resident of Whittier, California. Within the last year, Plaintiff purchased Great Value Brand Frozen Waffles that are subject to the Recalls.

23.     Plaintiff Michelle Garcia is a citizen of Florida and a resident of Tampa, Florida Within the last year, Plaintiff McClure purchased Kodiak Cakes Vanilla Buttermilk Waffles that are subject to the Recalls.

24.     Plaintiff Marla Knepper is a citizen of Illinois and a resident of Chicago, Illinois. Within the last year, Plaintiff Knepper purchased Kodiak Brand Frozen Waffles and Breakfast Best Frozen Waffles that are subject to the Recalls.

25.     Plaintiff Kristen Beckham is a citizen of Texas and a resident of Wylie, Texas. Within the last year, Plaintiff Beckham purchased Good and Gather Organic Homestyle Mini Waffles that are subject to the Recalls.

26.     Plaintiff Tracy Foster is a citizen of Texas and a resident of Corsicana, Texas Within the last year, Plaintiff Foster purchased Great Value Buttermilk Waffles that are subject to the Recalls.

27.     Defendant Treehouse Foods, Inc., is a corporation organized under the laws of Delaware with its principal place of business located in Oak Brook, Illinois. Defendant manufactures, markets, and distributes processed foods across the United States for sale in groceries and retail markets.

## FACTUAL ALLEGATIONS

***Frozen Breakfast Foods Contaminated with* Listeria monocytogenes *are Dangerous for Human Consumption***

28.     *Listeria monocytogenes* is a pathogenic bacterium that can cause listeriosis, an infection of the intestine that is capable of spreading to other areas of the human body. *L. monocytogenes* is able to grow at low temperatures, including temperatures maintained in freezers and refrigerators.[9]

---

[9] Angelika Gründling et al., Listeria monocytogenes *regulates flagellar motility gene expression through MogR, a transcriptional repressor required for virulence*, National Library of Medicine (Aug. 9, 2004), https://pmc.ncbi.nlm.nih.gov/articles/PMC514476/.

29.     The FDA warns that "*L. monocytogenes* is generally transmitted when food is harvested, processed, prepared, packed, transported or stored in environments contaminated with *L. monocytogenes*."[10]

30.     A person who becomes infected with *L. monocytogenes* may suffer a range of symptoms that can last for weeks. "Mild symptoms may include a fever, muscle aches, nausea, vomiting, and diarrhea. If the more severe form of listeriosis develops, symptoms may include headache, stiff neck, confusion, loss of balance, and convulsions. For the very young, the elderly, and the immune-compromised listeriosis can result in death."[11]

31.     Listeriosis is particular harmful for at-risk groups, such as pregnant individuals or people with compromised immune systems, and can cause miscarriage and stillbirth, as well as severe health complications, including death.[12]

32.     Humans can become ill with *L. monocytogenes* through consumption of foods contaminated with *L. monocytogenes*, and the longer the refrigerated foods are stored in the fridge, the more opportunity the pathogen has to grow. *L. monocytogenes* has been linked to many foods, including raw or undercooked poultry, sausage, hot dogs, deli meats, and raw or smoked fish.

33.     The CDC estimates that *L. monocytogenes* causes thousands of infections and hundreds of deaths each year.[13]

---

[10] *Listeria (Listeriosis)*, Food and Drug Administration, https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis (last accessed Nov. 13, 2024).
[11] *Id*.
[12] *Id*.
[13] *About* Listeria *Infection*, Centers for Disease Control and Prevention, https://www.cdc.gov/listeria/about/index.html (last accessed Nov. 13, 2024).

34.     Due to this known risk and danger of *L. monocytogenes*, manufacturers should have in place or implement quality and preventive control standards and practices to prevent sourcing of and use of ingredients with *L. monocytogenes* in frozen breakfast products.

### The Products Contaminated with Listeria Monocytogenes

35.     Defendant's initial October 18, 2024 recall included 21 brands that were contaminated with *L. monocytogenes*. This list was expanded on October 22, 2024 to include 42 brands. The full list includes hundreds of products and lot codes.

36.     To date, Treehouse has recalled Products it produces under 42 different brand names, including 365 Organic, Always Save, Best Choice, Bettergoods, breakfast Best, Brookshire's, Central Market, Clover Valley, Culinary Tours, Essentials, Food Lion, Foodhold, Full Circle, Giant Eagle, Good & Gather, Gorden Food Service, Great Value, Greenwise, Hannaford, Harris Teeter, H-E-B, H-E-B Higher Harvest, Kodiak Cakes, Kroger, Krusteaz, Nature's Basket, Nature's Path Organic, Nature's Promise, O Organics, Pics by Price Chopper, Private Selection, Publix, Schnucks, SE Grocers, Signature Select, Simple Truth, Simple Truth Organic, Tops, Trader Joes, Wegman's, Wild Harvest, and Yello.

37.     The recalled products distributed for consumption under the above brands are unsafe for eating and can cause a wide range of symptoms due to infection.

38.     Defendant was aware of the dangers associated with *L. monocytogenes* contamination prior to the manufacture of the recalled products and should have identified any such contamination prior to placing these products in the marketplace through its own testing and analysis. However, Defendant did not identify this contamination, and as a result, did not inform Plaintiffs or Class members that its products were subject to a risk of listeria contamination, or that consumption of such products may cause listeriosis. Defendant omitted this knowledge from the

packaging, labeling, marketing, and advertising of the Products, which omission induced Plaintiffs to purchase and consume the Products.

39.     No reasonable consumer would purchase products that risk causing listeriosis due to *L. monocytogenes* contamination, nor would any reasonable consumer have reason to expect the products offered on the shelves of their grocer to be contaminated and dangerous for consumption. Nothing on the Product labels or packaging, nor did the Products' marketing, or advertising information make known the Products they were purchasing included the risk of infection with listeriosis.

40.     Because Plaintiffs and Class members were deprived of such information, they were deprived of the benefit of the bargain and spent money on Products which were worthless or worth less than the price they paid. Had they been apprised of such information, Plaintiffs would not have purchased the products and certainly would not have consumed them.

41.     Defendant had a continuous obligation to disclose the risk of listeria contamination to Plaintiffs and the Class members due to its superior knowledge concerning the Product composition, as well as the fact the contamination is an issue of safety, which Plaintiffs and Class members have no reasonable way of discovering on their own. Failure to disclose such imperative information amounts to fraudulent misrepresentation, deceptive, unfair, and misleading conduct, and unlawful conduct actionable by Plaintiffs.

42.     Defendant's Products are adulterated, worthless, unfit for sale or for human use due to the presence of bacteria within the Products and because of the recall. Plaintiffs seek to recover damages for the purchase of the Products. They further seek to recover damages for the personal injuries they suffered having consumed the contaminated Products and suffered symptoms as a result of listeriosis infection.

9

***Plaintiff Berbano's Experience with Products***

43.     During the relevant period, Plaintiff Berbano made multiple purchases of at least one of the Products, including Great Value Frozen Buttermilk Waffles. Plaintiff purchased the Products at multiple locations, including Walmart.

44.     In deciding to make his purchases of the Products, Plaintiff Berbano relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:





**TOASTER OVEN INSTRUCTIONS:**

1. Preheat oven to 375°F (190°C).
2. Place frozen waffles on a wire rack for 2½–3 minutes or until crisp and hot.
3. If waffles are thawed out, bake for 2 minutes.

**TOASTER INSTRUCTIONS:**

1. Brown frozen waffles in toaster at low setting.
2. Serve on warm plate with warm syrup and butter.

**OVEN INSTRUCTIONS:**

FROM FROZEN

1. Preheat oven to 375°F (190°C).
2. Place frozen waffles on a wire rack for 2½–3 minutes or until crisp and hot.
3. If waffles are thawed out, bake for 2 minutes.



45.      Nowhere on the Product packaging did Defendant disclose that the Products contained or may contain *L. monocytogenes*.

46.      Plaintiff Berbano and his family consumed the products.

12

47.     After consuming the Products, Plaintiff Berbano and his family experienced symptoms consistent with listeriosis including gastrointestinal issues, loss of balance, and headaches.

48.     Had Plaintiff Berbano known the Products contained or risked containing *L. monocytogenes* he would not have purchased the Products.

**Plaintiff Walsh's Experience with Products**

49.     During the relevant period, Plaintiff Walsh made multiple purchases of at least one of the Products, including Great Value Frozen Waffles. Plaintiff purchased the Products at multiple locations, including Food4Less.

50.     In deciding to make his purchases of the Products, Plaintiff Walsh relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:



# Nutrition Facts

12 servings per container

**Serving size  2 waffles (70g)**

Amount per serving

## Calories   150

| | % Daily Value* |
|---|---|
| **Total Fat** 5g | **6%** |
| Saturated Fat 0.5g | **3%** |
| Trans Fat 0g | |
| **Cholesterol** <5mg | **1%** |
| **Sodium** 310mg | **13%** |
| **Total Carbohydrate** 23g | **8%** |
| Dietary Fiber <1g | **3%** |
| Total Sugars 3g | |
| Includes 1g Added Sugars | **2%** |
| **Protein** 3g | |
| Vitamin D 0mcg | 0% |
| Calcium 240mg | 20% |
| Iron 1.4mg | 8% |
| Potassium 60mg | 0% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Calories per gram:
Fat 9  ·  Carbohydrate 4  ·  Protein 4

**INGREDIENTS:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SOYBEAN OIL, NONFAT MILK, WHEY, SUGAR, LEAVENING (SODIUM BICARBONATE, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), EGGS, SOY LECITHIN, CALCIUM CARBONATE, SALT, ENRICHMENT (DICALCIUM PHOSPHATE, PALMITATE, NIACINAMIDE, REDUCED IRON, CYANOCOBALAMIN, PYRIDOXINE HYDROCHLORIDE, THIAMINE HYDROCHLORIDE, RIBOFLAVIN) **CONTAINS MILK, EGGS, WHEAT AND SOY. DISTRIBUTED BY: Walmart Inc., Bentonville, AR 72716**

## OVEN INSTRUCTIONS:

**FROM FROZEN**

1. Preheat oven to 375°F (190°C).

2. Place frozen waffles on a wire rack for 2½-3 minutes or until crisp and hot.

3. If waffles are thawed out, bake for 2 minutes.

## TOASTER OVEN INSTRUCTIONS:

1. Preheat oven to 375°F (190°C).

2. Place frozen waffles on a wire rack for 2½-3 minutes or until crisp and hot.

3. If waffles are thawed out, bake for 2 minutes.

## TOASTER INSTRUCTIONS:

1. Brown frozen waffles in toaster at low setting.

2. Serve on warm plate with warm syrup and butter.





51.     Nowhere on the Product packaging did Defendant disclose that the Products contained or may contain *L. monocytogenes*.

52.     Plaintiff Walsh consumed the Products.

53.     Plaintiff Walsh experienced symptoms consistent with listeriosis after consuming the products, including loss of balance, diarrhea, and stomach pain. In fact, Plaintiff Walsh sought medication to provide relief from the symptoms he experienced.

54.     Had Plaintiff Walsh known the Products contained or risked containing *L. monocytogenes* he would not have purchased the Products.

***Plaintiff Garcia's Experience with Products***

55.     During the relevant period, Plaintiff Garcia made multiple purchases of at least one of the Products, including Kodiak Cakes Brand Vanilla Buttermilk Waffles Plaintiff purchased the Products at multiple locations, including Walmart.

56.     In deciding to make his purchases of the Products, Plaintiff Garcia relied on the

representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:











57.     Nowhere on the label did Defendant disclose the presence of potential presence of *L. monocytogenes* contamination.

58.     Plaintiff Garcia consumed the Products.

59.     Had Plaintiff Garcia known the Products contained or risked containing *L. monocytogenes* she would not have purchased the Products.

***Plaintiff Knepper's Experience with Products***

60.     During the relevant period, Plaintiff Knepper made multiple purchases of at least one of the Products, including Kodiak Brand Waffles. Plaintiff purchased the Products at multiple locations, including Target.

61.     In deciding to make her purchases of the Products, Plaintiff Knepper relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:











62.     Nowhere on the label did Defendant disclose the presence of potential presence of *L. monocytogenes* contamination.

63.     Plaintiff Knepper provided the Product to her mother who consumed the Products.

64.     After eating the Products, Plaintiff Knepper's mother experienced symptoms consistent with listeriosis including muscle aches, diarrhea, headaches, confusion, and loss of balance.

65.     Had Plaintiff Knepper known the Products contained or risked containing *L. monocytogenes* she would not have purchased the Products.

**Plaintiff Beckham's Experience with Products**

66.     During the relevant period, Plaintiff Beckham made multiple purchases of at least one of the Products, including Good and Gather Organic Homestyle Mini Waffles. Plaintiff purchased the Products at multiple locations, including Target and Kroger. Nowhere on the label did Defendant disclose the presence of potential presence of *L. monocytogenes* contamination.

67.     In deciding to make her purchases of the Products, Plaintiff Beckham relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:





68.     Nowhere on the Product packaging did Defendant disclose that the Products contained or may contain *L. monocytogenes*.

69.     Plaintiff Beckham fed the Product to her children.

70.     After consuming the Products, Plaintiff Beckham's children experienced gastrointestinal symptoms consistent with listeriosis.

71.     Had Plaintiff Beckham known the Products contained or risked containing *L. monocytogenes* she would not have purchased the Products.

***Plaintiff Foster's Experience with Products***

72.     During the relevant period, Plaintiff Foster made multiple purchases of at least on of the Products, including Great Value Buttermilk Waffles. Plaintiff purchased the Products at multiple locations, including Walmart.

73.     In deciding to make her purchases of the Products, Plaintiff Foster relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness.

74.     Nowhere on the Product packaging did Defendant disclose that the Products contained or may contain *L. monocytogenes*.

75.     Plaintiff Foster and her family members ceased consuming the Products upon learning of the contamination.

76.     Had Plaintiff Foster known the Products contained or risked containing *L. monocytogenes* she would not have purchased the Products.

## **CLASS ACTION ALLEGATIONS**

77.     Plaintiffs bring this action pursuant to Rule 23(a)(1)–(4), Rule 23(b)(1), (2), or (3),

and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed Nationwide Class: All persons residing in the United States who purchased one or more Products subject to the October 18, 2024 recall, the October 22, 2024, recall, or any subsequent recalls ("Nationwide Class").

78.    Plaintiffs Berbano and Walsh bring this action on behalf of themselves and a California State Sub-Class defined as follows: All persons residing in California who purchased one or more Products subject to the October 18, 2024 recall, the October 22, 2024, recall, or any subsequent recalls ("California State Sub-Class").

79.    Plaintiff Garcia also brings this action on behalf of herself and a Florida State Sub-Class defined as follows: All persons residing in Florida who purchased one or more Products subject to the October 18, 2024 recall, the October 22, 2024, recall, or any subsequent recalls ("Florida State Sub-Class").

80.    Plaintiff Knepper also brings this action on behalf of herself and a Illinois State Sub-Class defined as follows: All persons residing in Illinois who purchased one or more subject to the October 18, 2024 recall, the October 22, 2024, recall, or any subsequent recalls ("Illinois State Sub-Class").

81.    Plaintiffs Beckham and Foster also bring this action on behalf of themselves and a Texas State Sub-Class defined as follows: All persons residing in Texas who purchased one or more Products subject to the October 18, 2024 recall, the October 22, 2024, recall, or any subsequent recalls ("Texas State Sub-Class").

82.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

83. This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

## Numerosity of the Proposed Classes
### (Fed. R. Civ. P. 23(a)(1))

84. The members of the Classes are so numerous that their individual joinder would be impracticable. The Class and the state Sub-Classes each comprise at least tens-of-thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Classes may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice, including digital notice.

## Predominance of Common Questions of Fact and Law
### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

85. Common questions of law and fact exist as to all members of the Class and Sub-Classes. These questions predominate over the questions affecting only individual members of the Class and Sub-Classes. The common legal and factual questions include, without limitation:

    a. Whether Defendant knew or should have known that the Products were contaminated with *L. monocytogenes* that rendered the Products unsafe and unsuitable for human consumption;

    b. Whether Defendant failed to employ quality control measures and failed to properly manufacture, test and/or inspect its Products before distribution and sale;

    c. When Defendant learned or should have learned of *L. monocytogenes* contamination in its Products;

    d. Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Products;

    e. Whether Defendant failed to disclose material facts regarding the Products;

    f. Whether Defendant was negligent in producing the Products;

    g. Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Products;

h. Whether Defendant breached express warranties in connection with the distribution and sale of the Products;

i. Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Products;

j. Whether Defendant violated the state consumer protection statutes alleged herein;

k. Whether Defendant was unjustly enriched;

l. The nature of the relief, including damages and equitable relief, to which Plaintiff and the members of the Class and Sub-Classes are entitled; and

m. Whether Defendant is liable for attorneys' fees and costs.

**Typicality of Claims**
**(Fed. R. Civ. P. 23(a)(3))**

86. Plaintiffs' claims are typical of the claims of the Class and Sub-Classes because Plaintiffs, like all other Class and Sub-Class members, purchased Defendant's Products, suffered damages as a result of those purchases, and seeks the same relief as the proposed Class and Sub-Class members.

**Adequacy of Representation**
**(Fed. R. Civ. P. 23(a)(4))**

87. Plaintiffs are adequate representatives of the Class and Sub-Classes because their interests do not conflict with the interests of the members of the Class and Sub-Classes and have retained counsel competent and experienced in complex class action, including consumer litigation and food contamination litigation.

88. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class and Sub-Classes.

**Superiority of a Class Action**
**(Fed. R. Civ. P. 23(b)(3))**

89. A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class and Sub-Classes. There is no

special interest in Class or Sub-Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class and Sub-Classes, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class and Sub-Classes individually to redress effectively the wrongs done to them. And, even if members of the Class and Sub-Classes themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief**
**(Fed. R. Civ. P. 23(b)(1) and (2))**

90.     In the alternative, this action may properly be maintained as a class action, because:

a.   the prosecution of separate actions by individual members of the Class and Sub-Classes would create a risk of inconsistent or varying adjudication with respect to individual Class and Sub-Class members, which would establish incompatible standards of conduct for Defendant; or

b.   the prosecution of separate actions by individual Class and Sub-Class members would create a risk of adjudications with respect to individual members of the Class and Sub-Classes which would, as a practical matter, be dispositive of the interests of other members of the Class and Sub-Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c.   Defendant has acted or refused to act on grounds generally applicable to the Class and Sub-Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class and Sub-Classes as a whole.

**Issue Certification**
**(Fed. R. Civ. P. 23(c)(4))**

28

91.     In the alternative, the common questions of fact and law, set forth in Paragraph 41, are appropriate for issue certification on behalf of the proposed Class and Sub-Classes.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Nationwide Class and all Sub-Classes)**

92.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

93.     Defendant owed a duty of care to Plaintiffs and the Class and Sub-Class members. Defendant breached that duty.

94.     Defendant is the manufacturer of the Products purchased by Plaintiffs and Class and Sub-Class members.

95.     Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of its Products, including identifying all affected Products and/or to promptly recall and remove all of the affected Products from the marketplace, including taking all appropriate remedial action.

96.     By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured products contaminated with dangerous levels of *L. monocytogenes* that rendered its Products unsafe and unsuitable for human consumption.

97.     As a result of Defendant's breaches and violations, Plaintiffs and Class and Sub-Class members suffered harm.

98.     Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class and Sub-Class members.

99.     At all relevant times, Plaintiffs and members of the Class and Sub-Classes acted lawfully and with due care and did not contribute to their own injuries.

100.     Accordingly, Plaintiffs and members of the Class and Sub-Classes are entitled to damages and other appropriate relief, as prayed for hereunder.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of Nationwide Class and all Sub-Classes)

101.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

102.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

103.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Products, including that the Products were nutritious, healthful, and suitable for human consumption.

104.     Defendant has no reasonable grounds for believing that its misrepresentations were true. Among other things, Defendant represented that the Products were of high quality, healthy, safe, and suitable for human consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Products were contaminated with *L. monocytogenes* and were not fit for human consumption.

105.     Defendant made such misrepresentations with the intent to induce Plaintiffs and Class and Sub-Class members to rely on its misrepresentations and purchase Products which were recalled because of *L. monocytogenes* contamination.

106.     Plaintiffs and Class and Sub-Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class and Sub-Class members purchased and consumed the Products containing *L. monocytogenes*, or provided them to family members for

consumption.

107.     As a direct and proximate consequence, Plaintiffs and Class and Sub-Class members suffered harm. Among other things, they would not have purchased Defendant's Products, or they would have paid less had they known of the presence, or the potential presence, of *L. monocytogenes*.

108.     Plaintiffs and Class and Sub-Class members are therefore entitled to damages and relief, as prayed for hereunder.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Nationwide Class and all Sub-Classes)**

109.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

110.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant for breach of express warranty.

111.     Defendant marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Class and Sub-Classes.

112.     Defendant expressly warranted, advertised, and represented to Plaintiffs and members of the Class and Sub-Classes that the Products were and are high quality, healthy, safe, and suitable for human consumption.

113.     Defendants made these express warranties regarding the Products' quality, ingredients, and suitability for human consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Class and Sub-Classes

entered into upon purchasing the Products.

114.     Defendant's warranties, advertisements, and representations were made in connection with the sale of the Products to Plaintiff and members of the Class and Sub-Classes. Plaintiffs and members of the Class and Sub-Classes relied on Defendant's warranties, advertisements, and representations regarding the Products in deciding whether or not to purchase Defendant's Products.

115.     Defendant's Products do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for consumption, as they were recalled due to *L. monocytogenes* contamination

116.     Defendant should have discovered the contamination through its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that would have revealed the Products as contaminated with *L. monocytogenes*.

117.     Privity exists because Defendant expressly warranted to Plaintiffs and members of the Class and Sub-Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of dangerous levels of *L. monocytogenes* contamination.

118.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class and Sub-Classes suffered actual damages in that they purchased Products that were worth less than the price they paid, and they would not have purchased the Products had they known of the risk and/or presence of dangerous levels of *L. monocytogenes* contamination that do not conform to the Products' marketing and advertisements.

119.     Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief

available under the law.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On Behalf of Nationwide Class and all Sub-Classes)

120.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

121.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant.

122.    At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Products. Defendant knew or had reason to know of the specific use for which the Products were purchased.

123.    Plaintiffs purchased the Products manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

124.    Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

125.    An implied warranty that the Products were merchantable arose by operation of law as part of the sale of the Products.

126.    Defendant impliedly warranted to Plaintiffs and the Class and Sub-Classes that the Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Products' packaging, labels and/or advertisements, including that the food was high quality, healthy, safe, and suitable for human consumption. The Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food. The Products were and are not safe for consumption because they were recalled due to  *L. monocytogenes*

33

contamination.

127. Plaintiffs and members of the Class and Sub-Classes relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Products. Contrary to Defendant's representations and warranties, the Products were not fit for their ordinary use – human consumption- and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of *L. monocytogenes* contamination that do not conform to the packaging.

128. As a consequence, Defendant breached its implied warranties upon selling such Products, as each product was recalled due to possible contamination with *L. monocytogenes*.

129. Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Products.

130. Defendant was on notice of this breach, as Defendant was aware or should have been aware of the *L. monocytogenes* contamination in the Products due to its own testing and expertise, and/or based on testing conducted by various third parties as alleged herein that revealed the Products as contaminated with *L. monocytogenes*.

131. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Class and Sub-Classes have been damaged in an amount to be proven at trial.

132. Plaintiffs and members of the Class and Sub-Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

133. Privity exists because Defendant impliedly warranted to Plaintiff and members of the Class and Sub-Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by

failing to make any mention of *L. monocytogenes* contamination.

134. Nonetheless, privity is not required here because Plaintiffs and each Class and Sub-Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Products and have no rights under the warranties of the Products; the warranties were designed for and intended to benefit consumers only.

135. As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class and Sub-Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the *L. monocytogenes* contamination.

136. Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**Fraudulent Concealment - Fraud by Omission**
**(On Behalf of Nationwide Class and all Sub-Classes)**

137. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

138. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant for fraud by omission.

139. Defendant concealed from and failed to disclose to Plaintiffs and members of the Class and Sub-Classes that the Products were contaminated with *L. monocytogenes* and do not conform to the Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, healthy, safe, and suitable for human consumption.

140.     Defendant was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption; (3) Defendant had exclusive knowledge of its own test results showing *L. monocytogenes* contamination in its Products; and/or (4) Defendant knew that Plaintiffs and members of the Class and Sub-Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

141.     The facts concealed or not disclosed by Defendant to Plaintiffs and members of the Class and Sub-Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products. No reasonable consumer would have purchased Products had Defendant adequately and fully disclosed the truth.

142.     Defendant knew that this omission was material information that Plaintiffs and members of the Class and Sub-Classes required, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiffs and members of the Class and Sub-Classes to purchase its Products.

143.     Plaintiffs and members of the Class and Sub-Classes did not know or suspect that Defendant's Products were unsafe or contained unhealthy ingredients.

144.     Plaintiffs and members of the Class and Sub-Classes justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which are inferior when compared to how the Products are advertised and represented by Defendant.

145.    As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class and Sub-Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of *L. monocytogenes* contamination that do not conform to the products' labels, packaging, advertising, and statements.

146.    Plaintiffs and members of the Class and Sub-Classes seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Nationwide Class and all Sub-Classes)**

147.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

148.    Plaintiffs and members of the Class and Sub-Classes conferred a benefit upon Defendant. Plaintiffs and members of the Class and Sub-Classes paid money for Defendant's Products which were not as represented; they were not suitable for human consumption, they did not provide targeted nutrition for humans as represented, and/or they did not meet Defendant's guarantees promising taste and nutrition. Defendant has unjustly retained the benefits conferred upon it by Plaintiffs and Class and Sub-Class members.

149.    The circumstances as alleged herein make it inequitable for Defendant to retain such benefit. Specifically, Defendant retained that benefit even though its Products contain or may contain *L. monocytogenes* which renders the Products unsafe and unsuitable for human consumption. If Plaintiffs and Class and Sub-Class members had known the true nature of the Products, they would not have paid money for them or would have paid less.

150.    Plaintiffs and Nationwide Class and Sub-Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

### SEVENTH CAUSE OF ACTION
**Violation of California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of California State Sub-Class)**

151.    Plaintiffs Berbano and Walsh ("Plaintiffs" for purposes of this Count) incorporate by reference each and every allegation set forth above as if fully written herein.

152.    Plaintiffs bring this claim on behalf of the California State Sub-Class (the "Class" for purposes of this Count).

153.    Defendant's business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

154.    Defendant's practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate warranty laws.

155.    Defendant's actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

156.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, Defendant's misrepresentations were likely to deceive reasonable consumers. Among other things, Defendant made affirmative misrepresentations regarding the Products. Specifically, Defendant represented that the Products were suitable for human consumption, represented that the Products provided targeted nutrition, and guaranteed the products for taste and nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Products contained, or might contain, *L. monocytogenes* resulting in

injury to humans; and (2) Defendant failed to properly inspect and test Products for toxins and contaminants. Defendant had a duty to disclose these material facts because the Products were unsafe and because Defendant made affirmative representations about the Products. If Plaintiffs had known that the Products either (1) contained *L. monocytogenes* contaminants, or (2) that Defendant failed to properly inspect and test for toxins and contaminants adequately, Plaintiffs would not have purchased the Products.

157.    As a result of Defendant's wrongful business practices, Plaintiffs and the Class lost money and have suffered injury-in-fact.

158.    Defendant's wrongful business practices present an ongoing and continuing threat and should be enjoined.

159.    Plaintiffs and the Class seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiffs not have an adequate remedy at law.

160.    Accordingly, Plaintiffs and members of the Class are entitled to judgment and equitable relief.

**EIGHTH CAUSE OF ACTION**
**Violation of California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of California State Sub-Class)**

161.    Plaintiffs Berbano and Walsh ("Plaintiffs" for purposes of this Count) incorporate by reference each and every allegation set forth above as if fully written herein.

162.    Plaintiffs bring this claim on behalf of the California State Sub-Class (the "Class" for purposes of this Count).

163.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal

39

property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

164.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

165.    As alleged herein, the advertisements, labeling, acts, and practices of Defendant relating to the safety, ingredients, and oversight of Products misled consumers acting reasonably, as stated above.

166.    Plaintiffs and Class members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Defendant's Products in reliance on Defendant's false and misleading labeling claims concerning, among other things, the Products' safety, quality, ingredients, and manufacturing oversight.

167.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised and labelled the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising and product labels.

168.    Defendant profited from its sale of the falsely and deceptively advertised and labeled Products.

169.    As a result, Plaintiffs and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

170.    Plaintiffs and the Class were damaged because they would not have purchased Defendant's Products had they known the true facts regarding its safety and ingredients.

40

**NINTH CAUSE OF ACTION**
**Violation of Florida Unfair & Deceptive Trade Practices Act,**
**Fla. Stat. §§ 501.201, et seq.**
**(On Behalf of Florida State Sub-Class)**

171.    Plaintiff McClure ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

172.    Plaintiff brings this claim on behalf of the Florida State Class (the "Class" for purposes of this Count).

173.    Plaintiff and members of the Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

174.    Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

175.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ... " Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

176.    In the course of its business, among other things, Defendant made affirmative misrepresentations regarding the Products. Specifically, Defendant represented that the Products were suitable for human consumption, represented that the Products provided targeted nutrition, and guaranteed the products for taste and nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Products contained, or might contain, *L. monocytogenes* resulting in injury to humans; and (2) Defendant failed to properly inspect and test Products or ingredients for toxins and contaminants. Defendant had a duty to disclose these material facts because the Products were unsafe and because Defendant made affirmative representations about the Products. If Plaintiff had known that the Products either (1) contained *L. monocytogenes*, or (2) that

41

Defendant failed to properly inspect and test the Products or ingredients for contaminants adequately, Plaintiff would not have purchased the Products.

177. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding *L. monocytogenes* contamination.

178. Defendant thus violated the FUDTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Products were safe and suitable for human consumption. Defendant also failed to disclose and warn that the Products were unsafe and unsuitable for consumption; that the Products contained, or might contain, *L. monocytogenes* resulting in injury to humans; and that Defendant failed to properly inspect and test the Products or ingredients for toxins and contaminants.

179. Defendant intentionally and knowingly misrepresented material facts regarding the Products with intent to mislead Plaintiff and the Class.

180. Defendant knew or should have known that its conduct violated the FUDTPA.

181. Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Products.

182. Defendant's concealment of the true characteristics of the Products was material to Plaintiff and the Class.

183. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Products.

184. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

185. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

186. As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff and the Class suffered injury-in-fact and/or actual damage.

187. Plaintiff and the Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

188. Plaintiff and the Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**TENTH CAUSE OF ACTION**
**Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/2**
**(On Behalf of Illinois State Sub-Class)**

189. Plaintiff Knepper ("Plaintiff" for the purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

190. Plaintiff brings this claim on behalf of the Illinois State Class (the "Class" for purposes of this Count).

191. The Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 ("ICFA"), prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon

43

the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965."

192. In the course of its business, Defendant made affirmative misrepresentations regarding the Products that were deceptive and/or unconscionable. Specifically, Defendant represented that the Products were suitable for human consumption and provided targeted nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Products contained, or might contain, *L. monocytogenes* resulting in injury; and (2) Defendant failed to properly inspect and test Products and ingredients for contaminants. Defendant had a duty to disclose these material facts because the Products were unsafe and because Defendant made affirmative representations about the safety and health of the Products. If Plaintiff had known that the Products contained *L. monocytogenes* contaminants, or that Defendant failed to properly inspect and test the Products and ingredients for contaminants adequately, Plaintiff would not have purchased the Products.

193. Defendants violated 815 Ill. Comp. Stat. 505/2 by:

    a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    b. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

    c. representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

    d. representing that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

    e. advertising goods or services with intent not to sell them as advertised; and

    f. engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815l. Comp. Stat. 510/2 §§ (a)(2), (5), (6), (7), (9), and (12).

194. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding *L. monocytogenes* contamination.

195. Defendant thus violated the ICFA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Products were safe and suitable for human consumption. Defendant also failed to disclose and warn that the Products were unsafe and unsuitable for human consumption; that the Products contained, or might contain, *L. monocytogenes* resulting in injury; and that Defendant failed to properly inspect and test the Products for toxins and contaminants.

196. Defendant intentionally and knowingly misrepresented material facts regarding the Products with intent to mislead Plaintiff and the Class.

197. Defendant knew or should have known that its conduct violated the ICFA.

198. Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Products.

199. Defendant's concealment of the true characteristics of the Products was material to Plaintiff and the Class.

200. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Products.

201. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

202. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

203. As a direct and proximate result of Defendant's violations of the ICFA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

204. Pursuant to 815 Ill. Comp. Stat. 505/10a, Plaintiff and Class Members seek monetary relief against Defendant to recover (1) actual economic damages; (2) an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; (3) reasonable attorney's fees and costs; and (4) punitive damages and/or any other relief which the court may deem proper.

**ELEVENTH CAUSE OF ACTION**
**Violation of Illinois' Uniform Deceptive Trade Practices Act**
**815 Ill. Comp. Stat. 510/2**
**(On Behalf of Illinois State Sub-Class)**

205. Plaintiff Knepper ("Plaintiff" for the purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

206. Plaintiff brings this claim on behalf of the Illinois State Class (the "Class" for purposes of this Count).

207. The Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 ("Illinois UDTPA"), prohibits deceptive trade practices in the course of his or her business, vocation, or occupation.

208. By misrepresenting the Products as safe and/or suitable for human consumption, and by failing to disclose and actively concealing the dangers and risk of *L. monocytogenes*

contamination, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 Ill. Comp. Stat. 510/2.

209. Defendants violated 815 Ill. Comp. Stat. 510/2 by:

a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

c. representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

d. representing that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

e. advertising goods or services with intent not to sell them as advertised; and

f. engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815l. Comp. Stat. 510/2 §§ (a)(2), (5), (6), (7), (9), and (12).

210. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding *L. monocytogenes* contamination.

211. Defendant thus violated the Illinois UDTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Products were safe and suitable for human consumption. Defendant also failed to disclose and warn that the Products were unsafe and unsuitable for human consumption; that the Products contained, or might contain, *L. monocytogenes* resulting in injury; and that Defendant failed to properly inspect and test the Products for toxins and contaminants.

47

212. Defendant intentionally and knowingly misrepresented material facts regarding the Products with intent to mislead Plaintiff and the Class.

213. Defendant knew or should have known that its conduct violated the Illinois UDTPA.

214. Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Products.

215. Defendant's concealment of the true characteristics of the Products was material to Plaintiff and the Class.

216. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Products.

217. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

218. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

219. As a direct and proximate result of Defendant's violations of the Illinois UDTPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

220. Pursuant to 815 Ill. Comp. Stat. 510/3, Plaintiff and the Class seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, along with reasonable attorneys' fees and any other just and proper relief available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Sub-Classes, pray for relief and judgment against Defendants as follows:

A.      Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Class and Sub-Classes, and designating Plaintiffs' counsel as Class Counsel;

B.      Awarding Plaintiffs and the Class and Sub-Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.      Awarding Plaintiffs and the Class and Sub-Classes appropriate relief, including actual damages;

D.      For declaratory and equitable relief, including restitution and disgorgement;

E.      For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

F.      Awarding Plaintiffs and the Class and Sub-Classes the costs of prosecuting this action, including expert witness fees;

G.      Awarding Plaintiffs and the Class and Sub-Classes reasonable attorneys' fees and costs as allowable by law;

H.      Awarding pre-judgment and post-judgment interest; and

I.      Granting any other relief as this Court may deem just and proper

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 13, 2024

**DANIEL BERBANO, MICHAEL WALSH, MICHELLE GARCIA, MARLA KNEPPER, KRISTEN BECKHAM, and TRACY FOSTER,** on behalf of themselves and all others similarly situated,

s/ J. Dominick Larry
One of Plaintiffs' Attorneys

J. Dominick Larry
**NICK LARRY LAW LLC**

1720 W. Division St.
Chicago, IL 60622
Tel: 773.694.4690
Fax: 773.694.4691
nick@nicklarry.law

Randall K. Pulliam (*Pro Hac Vice* to be filed)
Samuel R. Jackson (*Pro Hac Vice* to be filed)
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Tel: 501-312-8500
Fax: 501-312-8505
rpulliam@cbplaw.com
sjackson@cbplaw.com

Jeffrey S. Goldenberg (OH #0063771)
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: 513-345-8291
Fax: 513-345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs and Classes*